[No. 13467.   Department Two.   August 14, 1916.]

The City of Aberdeen, *Respondent,* v. Equitable Surety Company, *Appellant,* Chehalis County Bank, *Respondent.*[1]

Municipal Corporations — Public Improvements — Contracts— Construction—Abandonment by Contractor—Rights of Assignee and Surety.   A city may call for and accept separate bids upon four separate parts of an improvement and enter into a single contract with a successful bidder on two of the parts, including in one contract the entire award made under the two separate bids; and where this is done by a single writing, on default of the contractor after completing the first part of the work, his assignee of the moneys earned cannot claim a balance in the hands of the city due only on the completion of the entire contract, as against the contractor's surety, performing the contract at a loss.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered April 15, 1916, upon findings in favor of the plaintiff, in an action on contract, tried to the court.   Reversed.

*Bridges & Bruener (Bogle, Graves, Merritt & Bogle,* of counsel), for appellant.

*Stewart & Tucker* and *A. Emerson Cross,* for respondent.

Morris, C. J.—Prior to October, 1912, there was in the city of Aberdeen a large district of low, wet, boggy land which the city desired to raise by suitable fill.   To this end an ordinance was passed, contemplating dividing the work into four parts, (1) clearing and removing unsuitable material, (2) filling and diking, (3) raising of sidewalks, and (4) raising catch basins and inlets.   Plans and specifications were drawn providing that separate contracts would be let for each of the subdivisions of the work, and that separate bids must be made.   The Spokane Paving & Construction Company submitted two bids, one for the clearing and re-

[1] Reported in 159 Pac. 683.

moval of unsuitable material, as provided for in the first sub-division, and the second for filling and diking. These bids were accepted by the city, and the work bid upon awarded to the construction company. A contract was then drawn up between the city and the construction company covering the two bids and requiring the construction company to give a bond for the faithful performance of the work and for the payment of labor and material. It was provided in the contract that monthly payments should be made upon monthly estimates, and that a sum not exceeding twenty-five per cent should be retained by the city until the final completion and acceptance of the work. The construction company procured the appellant, Equitable Surety Company, to furnish the required bond, and commenced the work called for under its contract. The work called for under the first bid was substantially completed, and the construction company thereupon undertook the completion of the second of its undertakings, namely, the necessary filling and diking, but was compelled to abandon this portion of the work without having made any of the fill, except a very small part, having, however, completed a large portion of the diking.

After the construction company had abandoned this work, the surety company, upon demand of the city, completed the work at an actual loss to it of approximately $30,000. After the abandonment of the work by the construction company, a number of claims for labor and material were filed, as provided by law, which the surety company was compelled to pay, amounting to approximately $3,000. Of this amount $316.13 was on account of labor and materials going into that portion of the work calling for clearing and the removal of unsuitable materials, and the surety company was required to do additional work under this portion of the contract of the value of $76.50, making an aggregate sum of $392.63 paid by the surety company on that portion of the work calling for clearing and removal of unsuitable materials, the balance of the amount paid by the surety com-

pany representing labor and material performed and fur-
nished in the filling and diking of the district. From month
to month as the work progressed, the city made payments
upon monthly estimates, retaining the percentage provided
for in the contract. When the work was abandoned by the
construction company, the city had in its hands bonds and
cash which had been earned by the construction company
in the clearing and removal of unsuitable material in the sum
of $1,343.28. While performing its contract, the construc-
tion company borrowed various sums from the respondent
bank, securing the payment thereof by assigning to the bank
the moneys earned under the contract. Under this assign-
ment, the bonds earned by the construction company were
surrendered to the bank from time to time, but at the time
of the commencement of this action there was still due the
bank on this account a sum in excess of $1,400.

After the construction company had abandoned the work,
the surety company demanded of the city the sum of $1,-
343.28 remaining in its possession, which demand was re-
fused. The respondent bank made a like demand, which was
also refused. Thereafter the city commenced this action,
bringing the $1,343.28 into court and asking a determina-
tion as to who was entitled to this sum as between the bank
and the surety company. The lower court found that the
bank was entitled to all of the money except $392.63, which
the surety company had paid on account of claims filed with
the city for labor and material entering into the clearing and
removal of unsuitable material, and entered judgment ac-
cordingly.

The judgment is based upon a conclusion of the lower
court that the contract between the construction company
and the city was in fact and law two contracts, one for the
work of clearing and removal of unsuitable material, and
the other for the filling and diking. This conclusion of law
presents the only question raised on this appeal, for if it
should be held that the contract while one in form was in

fact two, then the decision of the lower court as to the award-
ing of the money to the bank is correct. If, however, the con-
tract is single, then the appellant is entitled to the money.
We here set forth the contract:

"This indenture made and entered into this the 18th day of
October, 1912, by and between the Spokane Paving and Con-
struction Company, a corporation, duly organized and exist-
ing under and by virtue of the laws of the state of Washing-
ton, hereinafter called the contractor, as party of the first
part, and the City of Aberdeen, a municipal corporation of
the second class, duly organized and existing under and by
virtue of the laws of the state of Washington, hereinafter
called the city, as party of the second part, Witnesseth:

"That the said contractor for and in consideration of the
stipulations and agreements herein contained agrees with the
said city as follows:

"(1) That the said contractor shall and will, at its own
proper cost and expense, provide all the materials and per-
form all the work and labor necessary for the clearing of all
the lands, including streets, alleys, public places and private
property within the area known and described as 'Filling
District No. 2,' and for filling with earth, sand, gravel or
other suitable material and for grading said area, including
streets, alleys, public places and private property, to the
grades of such streets, and to the grades provided in the
plans, specifications and details of the city engineer of the
city of Aberdeen and Ordinance No. 1239 of the city of Aber-
deen, and for the construction of all necessary bulkheads,
dikes, gates and drains for the purpose of making such fill,
not, however, to include the placing of drain pipe or the con-
struction or building up of manholes or flush tanks, or any
of the work known as draining, for which a contract has been
let to other parties, said work to be done all in accordance
with the plans, specifications and details prepared by the city
engineer of said city, and which are hereby referred to and
attached hereto, and made a part of this contract as fully
and effectually as though written out herein, all under the
provisions of Ordinance No. 1239 of the city of Aberdeen
creating local improvement district known as 'Filling Dis-
trict No. 2,' the boundaries of the district so to be improved
being described and designated fully in said Ordinance No.

1239 and the official map of said Filling District No. 2, which
are hereby referred to and made a part of this contract.

"(2) It is understood and agreed that the said contractor
shall commence work upon said clearing and the removing
of sawdust in said district within thirty (30) days after
written notice shall have been given by the said city engi-
neer and said clearing work shall be carried on with a suffi-
cient force of men so as to secure its completion within the
period of six (6) months from and after the commencement
of such work, and in case the said contractor shall fail to com-
plete the work of such clearing within the time specified, there
shall be deducted from the amount otherwise due on said
clearing contract the sum of twenty-five dollars ($25) per
day for each and every day thereafter that such clearing work
shall remain uncompleted as liquidated damages for failure
to complete the said work within the time specified.

"(3) It is understood and agreed that the said contract-
or shall commence work of filling and grading within the pe-
riod of two (2) months after written notice so to do shall
have been given him by the said city engineer, and said fill-
ing and grading shall be carried on regularly and with a suffi-
cient force of men so that the same will be completed within the
period of twelve (12) months from and after the service of
said notice to commence work; and in case said contractor
shall fail to complete said filling and grading within the time
specified, there shall be deducted from the amount otherwise
due it the sum of fifty ($50) dollars per day for each and
every day after said time that said work shall remain un-
completed as liquidated damages for failure to complete the
work within the time specified.

"(4) In consideration of the full performance of said work
by the said contractor, said city agrees to pay the said con-
tractor at the following rates as measured and estimated by
the city engineer of said city, to-wit:

Clearing, per acre.............................$50.00
Removing sawdust, hauling out of filling district per
    cu. yd. ...................................    .40
Filling, per cu. yd............................    .12
Dikes, per lin. ft.............................    .45

Such payment to be made upon monthly estimates as the work
progresses, provided, however, no payment shall be made until
after the equalization of the roll for said local improvement

district and provided further that a reasonable sum, not exceeding Twenty-five (25%) per cent, shall be retained by the city upon such estimate until the final completion and acceptance of said work.

"(5) Said city hereby agrees to pay said contractor the amount of this contract either in local improvement fund bonds issued by the city against said Filling District No. 2, created by Ordinance No. 1239 of the ordinances of the city of Aberdeen, and said contractor agrees to accept such bonds at par, or in money realized from the negotiation and sale of bonds issued against said Filling District No. 2, at the option of the said city, and the said city reserves the right at its election, either to pay the contractor in local improvement fund bonds issued against said Filling District No. 2, or to negotiate and sell said bonds of said Filling District No. 2, to pay the said contractor out of the proceeds thereof; that any attempt on the part of the city to sell said bonds, or any of them, shall not be construed as an election on its part to sell such bonds unless the sale of such bonds shall be actually made by the city and the proceeds received from such sale by the said city, that said bonds so issued shall be payable on or before ten (10) years from date of issuance and bear interest at the rate of eight (8) per cent per annum until paid, such bonds to be issued and redeemed in the manner provided by the ordinances of the city of Aberdeen and the laws of the state of Washington applicable thereto.

"(6) That the contractor shall have no claim against the city for any part or portion of the work, labor or materials embraced within this contract, but shall rely solely, for compensation for the work, labor and materials embraced in this contract, upon such of such bonds as may be issued to said contractor to the amount of this contract by said city of Aberdeen against said Filling District No. 2, the proceeds of such bonds as may be sold by the said city to pay said contractor the amount of this contract, the assessment upon the property embraced in said filling district No. 2 and upon the fund created by such assessment upon such property within such district, and upon any re-assessment of such property embraced within such district and the fund created thereby.

"(7) Said contractor is required to furnish a bond to the city of Aberdeen in the penal sum of $60,000 conditioned for the faithful performance of said contract and for the protection of all laborers, mechanics, subcontractors and materialmen and all persons furnishing the said contractor or any of its sub-contractors, labor, provisions or supplies for the carrying on of said work, and all persons who would otherwise be entitled to liens upon said work, the amount of said bond being approximately seventy-five (75) per cent of the contract price of said work.

"(8) Said contractor further agrees to save, protect and keep said city free and harmless from all loss, damage or liability caused by any neglect or want of proper care or act or omission done or suffered to be done by the said contractor, its agents, servants, employees or sub-contractors in the performance of said contract.

"(9) Said contractor further agrees to observe the laws of the state of Washington with relation to the number of hours per day which men may be employed upon said work, and this contract shall be subject to cancellation and forfeiture by the officers or agents of the city authorized to contract for or supervise the execution of such work, in case men are employed upon said work for more than eight (8) hours in any calendar day or such work is not performed in accordance with the policy of the state of Washington relating to such work.

"(10) Said contractor expressly agrees to pay into the city treasury the amount required to be paid to the state of Washington by chapter 74 of the Session Laws of 1911 (Workmen's Compensation Act) before payment is made to it by the city, and for the purpose of estimating such amounts, the contractor shall file with the city clerk, on or before the 1st day of each month, a certified statement of the total pay roll of the preceding month, classified as required by law, and shall pay into the city treasury the amounts shown to be due to the state of Washington on account of said act. It is agreed that the city in case of the failure of the contractor to prepare and file such estimate, may require its engineer to prepare the same, and said estimate, when prepared and filed, shall be binding upon the contractor, and the said contractor hereby expressly authorizes the city of Aberdeen to pay to the state of Washington the amounts required to be

paid, in accordance with said act, and the said contractor expressly releases the city of Aberdeen from all liability on account of making any and all payments to the state of Washington, and in making final payment to the contractor upon this contract, all amounts so paid by the city of Aberdeen shall be charged to the contractor and deducted from the amount due it, and final payment under this contract shall not preclude the city from thereafter making claim against the contractor for any additional payment or compensation which the said city shall be required to pay to the state of Washington in pursuance of said act, the said contractor expressly agreeing to pay to and reimburse the city of Aberdeen for any payments so made, and the bond given in pursuance of this contract, shall remain in effect for the protection of the city of Aberdeen.

"In witness whereof, the said parties have caused these presents to be executed by their respective officers duly authorized and their respective corporate seals to be affixed by their proper officers.

"Spokane Paving and Construction Company,
a corporation,
By

"City of Aberdeen, a municipal corporation,
By
"Attest: Secretary.
"Attest: City Clerk."

This contract, it seems to us, speaks for itself, and little need be said in support of our conclusion that the contract is single, not only in form, but is in effect one contract. The clear and beneficial purpose to be served in calling for separate bids was increased competition and lower bids. Bids for one or more features of the work having been submitted and accepted, the advisability of the separate contract was at an end, except in case of separate awards. These observations do not establish the nature of the contract, but they afford ordinary and ample reason for the city pursuing the course manifest to us in calling for and accepting separate bids and then entering into a single contract which included the entire award made under the separate bids.

The judgment is reversed, and the cause remanded to the lower court with instructions to grant appellant the relief prayed for.

HOLCOMB, MAIN, BAUSMAN, and PARKER, JJ., concur.